IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TENNESSEE
WESTERN DIVISION

_____

ABDUL NOOH,

        Plaintiff,

vs.                                        No. 17-2833-JTF-dkv

CIT GROUP CONSUMER FINANCE,
INC.; MORTGAGE ELECTRONIC
REGISTRATION SYSTEM, INC.;
BANK OF AMERICA, N.A.; DITECH
FINANCIAL, LLC f/k/a GREEN TREE
SERVICING, LLC; BANK OF NEW YORK
MELLON, f/k/a BANK OF NEW YORK
as Trustee for Certificateholders
CWABS, INC., ASSET-BACKED
CERTIFICATES, SERIES 2006-BC3;
BAYVIEW LOAN SERVICING, LLC;[1]
WILSON & ASSOCIATES, PLLC, and
BELGRAVIA SQUARE, LLC,

        Defendants.

_____

REPORT & RECOMMENDATION ON THE DEFENDANTS' MOTIONS TO DISMISS

_____

On November 13, 2017, the *pro se* plaintiff, Abdul Nooh
("Nooh"), filed a thirty-six page "Complaint to Restrict and
Prohibit Foreclosure and Sale, for Declaratory Judgment, and
Injunctive Relief," in which he seeks to set aside the
foreclosure sale of real property located at 9757 Woodland Edge
Lane, Cordova, Shelby County, Tennessee 38018 ("the Property").

_____

[1]This defendant is incorrectly named in the complaint as Bay
View Loan Servicing, Inc. (*See* Mot. to Dismiss 1, ECF No. 19-
1.)

(ECF No. 1.)   The complaint named seven defendants: CIT Group Consumer Finance, Inc. ("CIT"); Mortgage Electronic Registration System, Inc.; Bank of America, N.A.; Ditech Financial, LLC f/k/a Green Tree Servicing, LLC; Bank Of New York Mellon, f/k/a Bank Of New York As Trustee For Certificateholders CWABS, Inc., Asset-Backed Certificates, Series 2006-Bc3 ("Bank of New York Mellon"); Bayview Loan Servicing, LLC; and Wilson & Associates, PLLC.   (*Id.*)   On November 22, 2017, Nooh filed a two-page "Replevin Complaint Pursuant to F.R.Civ.P Rule 64," which was docketed by the Clerk of Court as an amended complaint and in which he added Belgravia Square LLC as a defendant.   (Am. Compl., ECF No. 13.)   In the two-page amended complaint, Nooh states that he is entitled to the possession of the Property under Tennessee's right of redemption clause, Tenn. Code Ann. §§ 66-8-101, 102, but does not otherwise set forth any causes of action.   (*Id.* at 2.)   An amended complaint ordinarily supersedes an earlier complaint, *Calhoun v. Bergh*, 769 F.3d 409, 410 (6th Cir. 2014)(citations omitted); however, given Nooh's *pro se* status, the court will consider both complaints in issuing the instant Report & Recommendation.

Now before the court are the motions to dismiss filed by all the defendants.   (ECF Nos. 16, 19, 23, 26, 30, 33.)   Nooh

has only responded to CIT's motion to dismiss. (ECF Nos. 21.)[2]
Nooh was granted two extensions to respond to Bank of America,
N.A.'s and Wilson & Associates, PLLC's motions to dismiss,
nevertheless, Nooh failed to respond to the motions by the March
30, 2018 deadline specified in the court's order.[3] (See ECF Nos.
37, 40.) For reasons that follow, it is recommended that the
defendants' motions to dismiss be granted and that Nooh's
complaint be dismissed for failure to state a claim pursuant to
Federal Rule of Civil Procedure 12(b)(6).

## I.   FACTS

Nooh's original complaint and amended replevin complaint
are an attempt to set aside the foreclosure sale of the Property
due to various alleged violations by the defendants. (Compl. 1,
ECF No. 1.) On December 30, 2005, Nooh obtained a loan from
defendant CIT for $259,200 and executed a promissory note

---

[2]In his response, Nooh merely points out that CIT references
the wrong property in its motion to dismiss and does not
otherwise address the substance of CIT's motion to dismiss.
(See ECF No. 21.)   In its reply, CIT acknowledges that it
mistakenly identified the property address in its memorandum.
(Reply 2, ECF No. 28.)   Nevertheless, the Promissory Note and
the Deed of Trust attached to CIT's motion to dismiss identify
the correct property address; therefore, the misidentification
of the property address in CIT's memorandum does not change any
of the bases of dismissal asserted by CIT.

[3]On March 13, 2018, Nooh filed a document entitled
"Notice/Order of Repurchase, Subrogation of Note, & Transfer of
Title Deed." (ECF No. 41.) This document does not respond to
the motions to dismiss or address the arguments raised therein.

("Note") in favor of CIT.   (ECF No. 16-1.)[4]   To secure repayment

of loan, Nooh executed a Deed of Trust.   (Deed of Trust, ECF No.

16-2.)[5]   At some point, the Deed of Trust was transferred to the

Bank of New York Mellon.   (*See* ECF No. 19-4.)   On October 25,

2017, Bayview Loan Servicing, LLC as attorney-in-fact for the

Bank of New York Mellon, executed an Appointment of Successor

Trustee naming Wilson and Associates, PLLC as successor trustee

under the Deed of Trust.   (ECF No. 19-3.)[6]   On November 17, 2017,

Wilson and Associates conducted a foreclosure sale of the

Property and subsequently executed a Trustee's Deed

---

[4]The court may consider "'matters of public record, orders, items appearing in the record of the case, and exhibits attached to the complaint,'" without converting the motion to dismiss into one for summary judgment. *Amini v. Oberlin Coll.*, 259 F.3d 493, 502 (6th Cir. 2001)(quoting *Nieman v. NLO, Inc.*, 108 F.3d 1546, 1554 (6th Cir. 1997); *see also Rondigo, L.L.C. v. Twp. of Richmond*, 641 F.3d 673, 680-81 (6th Cir. 2011)(quoting *Bassett v. Nat'l Collegiate Athletic Ass'n*, 528 F.3d 426, 430 (6th Cir. 2008).  The court may also consider "documents that a defendant attaches to a motion to dismiss . . . if they are referred to in the plaintiff's complaint and are central to her claim." *Amini*, 259 F.3d at 502 (internal quotations and citations omitted). The court can thus consider the loan documents in this case because they are central to Nooh's claim, he refers to them in the complaint, and they are public records.

[5]The Deed of Trust was recorded in the Shelby County Register of Deeds Office on January 17, 2006, as Instrument Number 06009192.  *See* Deed of Trust, Shelby County Reg. of Deeds, http://register.shelby.tn.us/index.php (select "Document Number" under "Search Type"; enter Instrument Number and click "Search").

[6]The Appointment of Successor Trustee is recorded in the Shelby County Register of Deeds Office as Instrument Number 17112947.

memorializing the sale.   (Trustee's Deed, ECF No. 19-4.)[7]   The Property was sold to Belgravia Square LLC, the highest bidder. (*Id.* at 2.)

According to Nooh, after he closed on the Property, the "original lender (or other entity claiming ownership of the Note) signed a [Pooling and Servicing Agreement ("PSA")]" and the loan was securitized and transferred to a Real Estate Mortgage Investment Conduit ("REMIC") trust.   (Compl. 5-8, ECF No. 1.)   Later in the complaint, Nooh states that CIT sold the Note to "the Federal Reserve or into the securities market." (*Id.* at 10.)   Nooh states that he:

> disputes the title and ownership of [the Property] . . . in that the originating mortgage lender, and others alleged to have ownership of Plaintiff's mortgage note and/or Deed of Trust, have unlawfully sold, assigned and/or transferred interest in a Promissory Note and Deed of Trust related to the Property, and, thus, do not have lawful ownership or a security interest in [the Property].

(Compl. 4, ECF No. 1.)   According to the court's interpretation, Nooh sets forth fifteen separate causes of action.   (*Id.* at 11-34.)[8]   He requests declaratory and injunctive relief, rescission

---

[7]The Trustee's Deed is recorded in the Shelby County Register of Deeds Office as Instrument Number 17122531.

[8]Nooh's causes of action are not numbered consecutively and neither are the paragraph numbers.   Nooh enumerates eighteen separate causes of action; however, in three of his enumerated causes of action — the Eighth, Eleventh and Twelfth Causes of Actions — he merely states the type of relief requested such as declaratory relief, rescission, and injunctive relief, and

of the loan, compensatory, special, general, and punitive damages, and attorney's fees and costs. (*Id.* at 24, 28, 29, 34-35.)[9]

## II.  ANALYSIS

A.  <u>Standard of Review for Failure to State a Claim</u>

In assessing whether Nooh's original complaint and amended replevin complaint state a claim on which relief may be granted, the court applies the standards under Federal Rule of Civil Procedure 12(b)(6), as stated in *Ashcroft v. Iqbal*, 556 U.S. 662 (2009) and *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007). A complaint must "'contain[] sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face.'"  *Courie v. Alcoa Wheel & Forged Prods.*, 577 F.3d 625,

---

alleges no causes of action.  (*See id.* at 24, 28, 29.)

[9]Notably, in June 2011, Nooh filed a prior lawsuit against several of the same defendants named in the instant action seeking to set aside the foreclosure sale of the Property.  *Nooh v. ReconTrust Co.*, No. 11-2506-STA-dkv, 2012 WL 1075844, at *1 (W.D. Tenn. Mar. 29, 2012); *see also* Compl. 26, Nooh v. ReconTrust Co., N.A. et al., Case No. 11-cv-02506-STA-dkv (W.D. Tenn. June 20, 2011); ECF No. 1.  Under the doctrine of res judicata, "a final judgment on the merits of an action precludes the parties or their privies from relitigating issues that were or could have been raised in that action."  *Allen v. McCurry*, 449 U.S. 90, 94 (1980)(citation omitted); *see also Kane v. Magna Mixer Co.*, 71 F.3d 555, 560 (6th Cir. 1995).  The court dismissed Nooh's complaint pursuant to 28 U.S.C. § 1915(e)(2) for lack of subject-matter jurisdiction.  *Nooh*, 2012 WL 1075844, at *8.  Because dismissals for lack of jurisdiction are not considered to be on the merits, *see Cemer v. Marathon Oil Co.*, 583 F.2d 830, 832 (6th Cir. 1978)(citing Fed. R. Civ. P. 41(b)), res judicata does not apply to the instant action.

629 (6th Cir. 2009)(quoting *Iqbal*, 556 U.S. at 678). The court "construes the complaint in a light most favorable to [the] plaintiff" and "accepts all factual allegations as true" to determine whether they plausibly suggest an entitlement to relief. *HDC, LLC v. City of Ann Arbor*, 675 F.3d 608, 611 (6th Cir. 2012). However, "pleadings that . . . are no more than conclusions[] are not entitled to the assumption of truth. While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations." *Iqbal*, 556 U.S. at 679; *see also Twombly*, 550 U.S. at 555 n.3 ("Rule 8(a)(2) still requires a 'showing,' rather than a blanket assertion, of entitlement to relief. Without some factual allegation in the complaint, it is hard to see how a claimant could satisfy the requirement of providing not only 'fair notice' of the nature of the claim, but also 'grounds' on which the claim rests.").

"*Pro se* complaints are to be held to less stringent standards than formal pleadings drafted by lawyers, and should therefore be liberally construed." *Williams v. Curtin*, 631 F.3d 380, 383 (6th Cir. 2011)(internal quotation marks omitted). *Pro se* litigants, however, are not exempt from the requirements of the Federal Rules of Civil Procedure. *Wells v. Brown*, 891 F.2d 591, 594 (6th Cir. 1989); *see also Brown v. Matauszak*, 415 F. App'x 608, 613 (6th Cir. 2011)("[A] court cannot create a claim

which [a plaintiff] has not spelled out in his pleading.")(internal quotation marks omitted); *Payne v. Sec'y of Treas.*, 73 F. App'x 836, 837 (6th Cir. 2003)(affirming *sua sponte* dismissal of complaint pursuant to Fed. R. Civ. P. 8(a)(2) and stating, "[n]either this court nor the district court is required to create Payne's claim for her"); *cf. Pliler v. Ford*, 542 U.S. 225, 231 (2004)("District judges have no obligation to act as counsel or paralegal to *pro se* litigants."); *Young Bok Song v. Gipson*, 423 F. App'x 506, 510 (6th Cir. 2011)("[W]e decline to affirmatively require courts to ferret out the strongest cause of action on behalf of *pro se* litigants. Not only would that duty be overly burdensome, it would transform the courts from neutral arbiters of disputes into advocates for a particular party. While courts are properly charged with protecting the rights of all who come before it, that responsibility does not encompass advising litigants as to what legal theories they should pursue.").

Nooh's complaint contains minimal factual allegations specific to his loan. Nearly all of Nooh's allegations are copied verbatim from a generic complaint readily available online.[10] Nevertheless, the court analyzes below Nooh's state-law claims based on the origination of his loan, Nooh's state-

---

[10]The generic complaint that Nooh used is located at: http://www.certifiedforensicloanauditors.com/pdfs/sample-complaint-package/Complaint-Petition.pdf.

law claims based on the assignment and securitization of the loan, Nooh's state-law claims based on the foreclosure of the Property, and Nooh's federal law claims.

B.   <u>Nooh's State-Law Claims Based on the Origination of the Loan – First, Fourth, Fifth, and Sixth Causes of Action</u>

In his First Cause of Action, which is only against CIT, Nooh maintains that CIT committed fraud in the inducement by providing Nooh with information it knew to be materially false in the offering of the loan.   (Compl. 11-12, ECF No. 1.)   In Tennessee, fraud claims have a three-year statute of limitations.   Tenn. Code Ann. § 28-3-105; *Vance v. Schulder*, 547 S.W.2d 927, 931-32 (Tenn. 1977).   Nooh obtained the loan from CIT and executed the Note and Deed of Trust on December 30, 2005, (ECF Nos. 16-1 & 16-2), more than three years prior to the filing of this suit.   Accordingly, Nooh's claim that CIT committed fraud in the inducement of the loan is barred by the statute of limitations.

Furthermore, Nooh has failed to state a plausible fraudulent-inducement claim.   To plead a fraudulent-inducement claim, the plaintiff must allege that the defendant:

> (1) made a false statement concerning a fact material to the transaction (2) with knowledge of the statement's falsity or utter disregard for its truth (3) with the intent of inducing reliance on the statement, (4) that the plaintiff reasonably relied on the statement, and (5) that this reliance resulted in an injury.

*Thompson v. Bank of Am., N.A.*, 773 F.3d 741, 752 (6th Cir. 2014) (citing *Baugh v. Novak,* 340 S.W.3d 372, 388 (Tenn. 2011)); *Walker v. Sunrise Pontiac-GMC Truck, Inc.*, 249 S.W.3d 301, 311 (Tenn. 2008). Federal Rule of Civil Procedure 9(b) requires that, "[i]n alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake." To comply with Rule 9(b), a complaint alleging a fraudulent representation "must '(1) specify the statements that the plaintiff contends were fraudulent, (2) identify the speaker, (3) state where and when the statements were made, and (4) explain why the statements were fraudulent.'" *Frank v. Dana Corp.*, 547 F.3d 564, 570 (6th Cir. 2008)(citing *Bender v. Southland Corp.*, 749 F.2d 1205, 1216 (6th Cir. 1984)). "Generalized and conclusory allegations that the Defendants' conduct was fraudulent do not satisfy Rule 9(b)." *Bovee v. Coopers & Lybrand C.P.A.*, 272 F.3d 356, 361 (6th Cir. 2001).

Here, Nooh alleges that CIT misrepresented that it was entitled to exercise the power of sale provision of the Deed of Trust and that it was the "holder and owner" of the Note and the beneficiary of the Deed of Trust. (Compl. 11-23, ECF No. 1.) Nooh has failed to set forth any facts to support a plausible inference that the representations are fraudulent or even mistaken. By executing the Deed of Trust, Nooh agreed that he owed CIT the debt evidenced by the Note, and he "irrevocably

grant[ed] and convey[ed] to Trustee, in trust, with power of sale," the Property. (Deed of Trust 1, ECF No. 16-2.) In the Note, Nooh clearly stated: "I understand that You may transfer this Note." (Note, ECF No. 16-1.) Therefore, Nooh has failed to specify any fraudulent statements, let alone meet Rule 9(b)'s heightened requirements for pleading fraud. Thus, Nooh fails to state a fraudulent-inducement claim against CIT.

In his Fourth Cause of Action, which again is only against CIT, Nooh seeks to set forth a breach of contract claim alleging that CIT failed to honor the loan commitment. (Compl. 16-17, ECF No. 1.) The gist of this cause of action is that CIT "refused to loan [Nooh] money as contracted." (*Id.* at 17 ¶ 87.) Similarly, in his Fifth Cause of Action, Nooh alleges that CIT breached its contract with him by failing to fund the loan. (*Id.* at 17-18.) In his Sixth Cause of Action, which he characterizes as a breach-of-fiduciary-duty claim, again only against CIT, Nooh alleges that CIT breached its "contractual obligations by engaging in conduct that undermined or violated the spirit and intent of the consumer protection laws." (*Id.* at 18-19.)

Under Tennessee law, "[b]reach of contract claims have a statute of limitations of six years." *Tigg v. Pirrelli Tire Corp.*, 232 S.W.3d 28, 31 n.1 (Tenn. 2007)(citing Tenn. Code Ann. § 28-3-109(a)(3)). "The essential elements of any breach of

contract claim are (1) the existence of an enforceable contract,
(2) nonperformance amounting to breach of the contract, and (3)
damages caused by the breach of the contract." *Brooks v. Wells
Fargo Bank, N.A.*, No. 3:12-0821, 2014 WL 345737, at *2 (M.D.
Tenn. Jan. 30, 2014)(citation and internal quotation marks
omitted). "[A] plaintiff must identify the specific contract
language whereby the defendant assumed a legally-enforceable
obligation to the plaintiff." *Id.* (citations and internal
quotation marks omitted).

Nooh's breach of contract claims are barred by the six-year
statute of limitations. Nooh executed the Note and Deed of
Trust on December 30, 2005. (ECF Nos. 16-1, 16-2.) Nooh filed
the instant complaint approximately twelve years after he
executed those documents. Furthermore, Nooh does not indicate
what provision of the Note or the Deed of Trust CIT allegedly
violated. Nooh's only claim seems to be that CIT refused to
loan Nooh money. However, the Note and Deed of Trust indicate
that CIT extended a mortgage loan to Nooh for $259,200 secured
by a Deed of Trust on the Property. (*See* ECF Nos. 16-1, 16-2.)
Nooh lived on the Property at least until it was foreclosed on
November 17, 2017. (ECF No. 19-4.) Nooh's contract claims,
therefore, are clearly implausible and the court recommends that
they be dismissed.

In his Sixth Cause of Action, Nooh also alleges that CIT

owed Nooh a fiduciary duty and that it breached that duty.
(Compl. 17-18, ECF No. 1.)   First, Nooh's breach-of-fiduciary-
duty claim is barred by the three-year statute of limitations.
*See Keller v. Colgems-EMI Music, Inc.*, 924 S.W.2d 357, 360
(Tenn. Ct. App. 1996)(holding in a breach of fiduciary case that
the three year statute of limitations for property tort actions
applies).   In addition, no fiduciary relationship arises between
a lender and a borrower.   *See Power & Telephone Supply Co., Inc.
v. SunTrust Banks, Inc.*, 447 F.3d 923, 932 (6th Cir.
2006)("Tennessee common law generally does not impose fiduciary
or similar duties on banks with respect to their customers,
depositors, or borrowers absent special circumstances.");
*Shirley v. NationStar Mortg., LLC*, No. 2:10-CV-144, 2011 WL
1196787, at *3 (E.D. Tenn. Mar. 29, 2011)("In Tennessee, absent
special facts and circumstances, the relationship between a
lender and a borrower is not inherently fiduciary.").   Nooh has
not pled facts or circumstances to indicate that there was a
fiduciary relationship between Nooh and CIT, and, moreover, he
has not pled how CIT violated such duty.   Thus, Nooh has failed
to state a claim for breach of fiduciary duty against CIT.

C.   Nooh's State-Law Claims Based on the Assignments and
     Securitization of the Loan – Third and Thirteenth Causes of
     Action

     In his Third Cause of Action, Nooh maintains that all the
defendants committed fraud by concealing the fact that the loan

13

was securitized. (Compl. 15, ECF No. 1.) A fraudulent-concealment claim arises "when a party who has a duty to disclose a known fact or condition fails to do so, and another party reasonably relies upon the resulting misrepresentation, thereby suffering injury." *Chrisman v. Hill Home Dev., Inc.*, 978 S.W.2d 535, 538-39 (Tenn. 1998)(citations omitted); *accord Haigh v. Orlans Assocs., P.C.*, No. 12-10867, 2012 WL 1365081, at *6 (E.D. Mich. Apr. 19, 2012)(citation and internal quotation omitted). Under Tennessee law,

> [t]he duty to disclose arises in three distinct circumstances: (1) "[w]here there is a previous definite fiduciary relation between the parties," (2) "[w]here it appears one or each of the parties to the contract expressly reposes a trust and confidence in the other," and (3) "[w]here the contract or transaction is intrinsically fiduciary and calls for perfect good faith."

*Shah v. Racetrac Petroleum Co.*, 338 F.3d 557, 571 (6th Cir. 2003)(quoting *Domestic Sewing Mach. Co. v. Jackson*, 83 Tenn. 418, 425 (1885)). As discussed above, pursuant to Rule 9(b) a plaintiff must plead a fraud claim with particularity.

Nooh again has failed to meet Rule 9(b)'s heightened pleading standard for fraud. Nooh does not state with any particularity the circumstances constituting fraud. First, as also discussed above, there is no fiduciary relationship between the parties because "the relationship between a lender and a borrower is not inherently fiduciary." *Shirley*, 2011 WL

14

1196787, at *3.    No other circumstances giving rise to a
fiduciary relationship are present here.    Therefore, the
Defendants did not owe Nooh a duty to inform him that the loan
would be securitized.    Furthermore, Nooh has not plausibly
alleged that the securitization of the loan constitutes a
material fact which the defendants were required to disclose.
As discussed below, Nooh's obligations under the Note or the
Deed of Trust were not affected by the securitization process.
Moreover, the Note and the Deed of Trust make clear that the
defendants reserved the right to transfer the Note.    (ECF Nos.
16-1, 16-2.)    Accordingly, Nooh has failed to state a claim for
fraud in the concealment against any of the defendants.

Furthermore, as to the securitization of the loan, which
Nooh seems to take issue with, (*see* Compl. 4-9, ECF No. 1), the
Sixth Circuit has thoroughly addressed and rejected claims based
on securitization of loans.    *See Thompson*, 773 F.3d at 747-50;
*Dauenhouer v. Bank of New York Mellon*, 562 F. App'x 473, 478-81
(6th Cir. 2014).    The securitization of a note is a practice
recognized and allowed by the law; it "is not some sort of
illicit scheme that taints the underlying debt." *Thompson*, 773
F.3d at 749 (citations omitted).    The securitization of Nooh's
loan does not render the Note or the Deed of Trust
unenforceable. *Dauenhauer*, 562 F. App'x at 480 (citations
omitted).    "Rather, securitization creates 'a separate contract,

15

distinct from [a p]laintiff's debt obligations under the [Note].'" *Id.* (quoting *Larota–Florez v. Goldman Sachs Mortg. Co.*, 719 F. Supp. 2d 636, 642 (E.D. Va. 2010)). Thus, it "does not alter a borrower's obligation to pay back his loan." *Id.* (citation omitted); *Thompson*, 773 F.3d at 749 (citing *Dauenhauer*). Therefore, the fact that Nooh's Note was securitized did not absolve him from his loan obligation or shield him from foreclosure. *Dauenhauer*, 562 F. App'x at 480 ("Securitization 'would not absolve [a] plaintiff from having to make payments on his loan or somehow shield plaintiff's property from foreclosure.'" (citation omitted)).

Lastly as to securitization, Nooh also maintains that the defendants violated the PSA governing the securitization of the loan. (Compl. 9, ECF No. 1.) Nooh does not have standing to challenge the PSA. "Courts have consistently rejected borrowers' requests to have mortgage assignments and foreclosures invalidated due to non-compliance with [PSA] provisions, based on borrowers' lack of standing." *Dauenhauer*, 562 F. App'x at 480 (citations omitted); *see also Livonia Prop. Holdings v. Farmington Road Holdings*, 717 F. Supp. 2d 724, 748 (E.D. Mich. 2010)(finding that the plaintiff did not have standing to challenge compliance with the PSA because he was not a party to the agreement). Nooh was not a party to the PSA at issue, and therefore, he lacks standing to challenge any non-

16

compliance with PSA provisions.  Accordingly, Nooh has failed to state a claim based on the securitization process.

In what Nooh denotes as his Thirteenth Cause of Action, Nooh maintains that all the defendants made misrepresentations and fraudulently concealed material facts regarding sales and assignments of the Note.  (Compl. 30-31, ECF No. 1.)  Nooh again has failed to meet Rule 9(b)'s heightened pleading standard for fraud because he does not specify what statements were fraudulent, identify the speaker, state where and when the statements were made, and explain why the statements were fraudulent.  *See Frank*, 547 F.3d at 570 (citation omitted).  There are no allegations that the defendants "represented to [Nooh] that [they] would hold or service [his] loan for any length of time," or that they would not transfer it.  *See Thompson*, 773 F.3d at 749.  Furthermore, pursuant to the express terms of the Note, Nooh agreed that the Note could be transferred.  (ECF No. 16-1.)  Accordingly, Nooh fails to state a fraud and misrepresentation claim against any of the defendants based on the assignment of the Note.

Moreover, to the extent that Nooh seeks to challenge the assignments of the Note and Deed of Trust, he lacks standing to do so.  Courts have routinely found that a debtor may not challenge an assignment between an assignor and assignee. *Bridge v. Aames Capital Corp.*, No. 109CV2947, 2010 WL 3834059,

at *4 (N.D. Ohio Sept. 29, 2010)(holding that the plaintiff lacked standing to challenge assignment of the mortgage because she was not a party to the transfer); *Livonia Prop. Holdings*, 717 F. Supp. 2d at 735 (holding that the plaintiff borrower did not have standing to dispute the validity of an assignment between assignor and assignee because plaintiff was "a non-party to those documents"). Because Nooh was not a party to the transfers nor were his contractual obligations under the Note or the Deed of Trust affected in any way, he lacks standing to challenge any assignment of the loan. Accordingly, Nooh fails to state any claim against any defendant premised on defective assignments of the loan.

D.  Nooh's State-Law Claims Based on the Foreclosure of the Property – Second, Seventh, Eighth, Ninth, Fourteenth, Fifteenth, and Sixteenth Causes of Action

Nooh's remaining state-law causes of action are related to the foreclosure of the Property. Specifically, in his Second Cause of Action, Nooh maintains that all the defendants lack standing to foreclose on the Property. (Compl. 13-15, ECF No. 1.) Nooh's lack-of-standing claim is premised on the erroneous theory that the defendants do not have a valid interest in the Property or the right to foreclose. As discussed herein, Nooh has failed to allege any claims based on the origination of his loan or the subsequent assignments. The Deed of Trust states that the Lender or the Trustee may elect to sell the Property if

Borrower defaults. (Deed of Trust 5-6, ECF No. 16-2.) The public records in this case indicate that Wilson & Associates, PLLC had authority to foreclose on the Property. (*See* ECF Nos. 16-1, 16-2, 19-3, 19-4.) Furthermore, Nooh does not allege "'any statutory or contractual requirements that were not met in pursuing foreclosure.'" *Renfroe v. Flagstar Bank*, No. 14-2914-STA-DKV, 2015 WL 3407361, at *3 (W.D. Tenn. Mar. 2, 2015), *R. & R. adopted*, No. 14-2914-STA-DKV, 2015 WL 3407375 (W.D. Tenn. May 26, 2015)(citing *Jackson v. WMC Mortg. Corp.*, No. 2:12-CV-02914-JPM-CG, 2013 WL 5550228, at *8 (W.D. Tenn. Oct. 8, 2013)); *see also Holt v. Citizens Cent. Bank*, 688 S.W.2d 414, 416 (Tenn. 1984)("If a foreclosure sale is legally held, conducted and consummated, there must be some evidence of irregularity, misconduct, fraud, or unfairness on the part of the trustee or the mortgagee that caused or contributed to an inadequate price, for a court [] to set aside the sale." (citations omitted)).

In what Nooh denotes as his Eighth Cause of Action, Nooh brings an intentional-infliction-of-emotional-distress claim against all defendants. (Compl. 19-21, ECF No. 1.) The elements of a claim for intentional infliction of emotional distress under Tennessee law are: "(1) the defendant's conduct was intentional or reckless; (2) the defendant's conduct was so outrageous that it cannot be tolerated by civilized society; and (3) the defendant's conduct resulted in serious mental injury to

the plaintiff." *Lourcey v. Estate of Scarlett*, 146 S.W.3d 48, 51 (Tenn. 2004)(citing *Bain v. Wells*, 936 S.W.2d 618, 622 (Tenn. 1997)).

Nooh's complaint contains no factual allegations that support a claim of intentional infliction of emotional distress. Nooh does not allege facts against a particular defendant, but attempts to collectively hold them liable, thus making it impossible for each defendant to be put on sufficient notice of the allegedly unlawful actions. Also, as discussed above, the complaint fails to sufficiently allege that the defendants' actions were tortious or fraudulent, let alone outrageous. This claim is also based on Nooh's conclusory and implausible allegations that the defendants do not have standing to foreclose on the Property. Therefore, as a matter of law, Nooh has not made allegations sufficient to support an intentional-infliction-of-emotional-distress claim and the court recommends dismissal of such claim.

In what he denotes as his Ninth Cause of Action, Nooh brings a claim for quiet title against all the defendants. (Compl. 21-22, ECF No. 1.) To succeed on such a claim, Nooh "must show that he himself has the title, or else he has no right to have a cloud removed [from] that to which he has no title to himself." *Dauenhauer*, 562 F. App'x at 481 (citation and internal quotation marks omitted). Here, the Deed of Trust

states that Nooh "irrevocably grant[ed] and convey[ed] to Trustee, in trust, with power of sale," the Property. (Deed of Trust 1, ECF No. 16-2.) In order to obtain superior title to the Property, Nooh must fulfill his obligation under the Note. (*Id.* at 6.) Nooh has not alleged any facts to indicate that he has fulfilled his obligations under the Note, and, thus, he does not have the right under the Deed of Trust to obtain title to the Property. Accordingly, Nooh's claim to quiet title fails.

In his Seventh Cause of Action (which is out of numerical order in the original complaint), Nooh alleges that all the defendants "disparaged Plaintiff's exclusive valid title by and through the preparing, posting, publishing, and recording of the documents previously described herein, including, but not limited to, the Notice of Default, Notice of Trustee's Sale, and Trustee's Deed." (Compl. 22-23, ECF No. 1.) To succeed on a claim for slander of title, a plaintiff must show: "(1) that it has an interest in the property, (2) that the defendant published false statements about the title to the property, (3) that the defendant was acting maliciously, and (4) that the false statements proximately caused the plaintiff a pecuniary loss." *Brooks v. Lambert*, 15 S.W.3d 482, 484 (Tenn. Ct. App. 1999)(quotation omitted).

Nooh's slander-of-title claim fails. This claim is also premised on Nooh's clearly baseless allegations that the

defendants "had no right, title, or interest in the Property,"
(*see* Compl. 23, ECF No. 1).   Nooh fails to allege rudimentary
facts such as the identity of the defendant who published the
above-listed documents, the dates the documents were published,
and the false statements included in those documents.   Nooh has
also failed to allege maliciousness on the part of the
defendants.   "A lender and its successors have the right to
record a deed of trust against real estate that is offered as
security for the loan.   Doing so does not create a cause of
action for slander of title.   The Deed of Trust acts as a
security interest in the property." *Gilliard v. JP Morgan Chase
Bank, N.A.*, No. 3:12-CV-236, 2012 WL 6139922, at *5 (E.D. Tenn.
Dec. 11, 2012)(citation omitted).   Accordingly, Nooh fails to
state a slander-of-title claim against any defendant.

In his Fourteenth Cause of Action, Nooh sets forth a claim
for unjust enrichment against all defendants.   (Compl. 31-32,
ECF No. 1.)   To set forth an unjust enrichment claim, the
plaintiff must allege: (1) that the plaintiff conferred a
benefit upon the defendant; (2) that the defendant appreciated
the benefit; and (3) that "it would be inequitable for
[defendant] to retain the benefit without payment of the value
thereof." *Freeman Indus., LLC v. Eastman Chem. Co.*, 172 S.W.3d
512, 525 (Tenn. 2005)(internal quotation marks and citation
omitted).

Nooh's unjust enriched claim is based on his infirm claim that the foreclosure of the Property was illegal which resulted in the unjust enrichment of the defendants. (Compl. 32, ECF No. 1.) These allegations have already been determined by the court to be entirely baseless. Therefore, Nooh fails to state a claim for unjust enrichment.

In his Fifteenth cause of action, Nooh sets forth a civil conspiracy claim against all the defendants. (Compl. 32, ECF No. 1.) To state such a claim under Tennessee law, a plaintiff must show: "(1) a common design between two or more persons; (2) to accomplish by concerted action an unlawful purpose, or a lawful purpose by unlawful means, (3) an overt act in furtherance of the conspiracy; and (4) resulting injury." *Moore v. Weinstein Co., LLC*, 3:09-CV-00166, 2012 WL 1884758, at *49 (M.D. Tenn. May 23, 2012)(citations omitted). "In order to state a cause of action for conspiracy, a plaintiff must demonstrate the existence of an underlying predicate tort." *Dauenhauer*, 562 F. App'x at 483. "[A] heightened level of specificity should be required for the Plaintiffs to plead their conspiracy claim." *Hagen v. U-Haul Co. of Tenn.*, 613 F. Supp. 2d 986, 997 (W.D. Tenn. 2009).

Nooh's complaint merely recites the elements of a civil-conspiracy claim. Nooh does not include any facts in support of the legal elements. Nooh has also failed to allege the

23

existence of an underlying predicate tort, let alone plausibly allege a common design by all the defendants to accomplish such a tort. Thus, Nooh fails to state a claim for civil conspiracy.

In his Sixteenth Cause of Action, Nooh pleads a claim for unlawful interference with possessory interest against all the defendants. (Compl. 32-34, ECF No. 1.) First, this claim is not a recognized tort in Tennessee. *Moore v. Carrington Mortg. Servs.*, No. 12-3098-STA-DKV, 2013 WL 2458720, at *13 (W.D. Tenn. June 6, 2013). Under this cause of action, Nooh invokes a number of additional theories of liability, including alleged violations of the Uniform Commercial Code and the National Currency Act, violations of the "monetary law of the United States of America," and other fraud claims. (Compl. 32-34, ECF No. 1.) The citations to these theories of liability are unsupported by any facts. Nooh raised similar vague claims in his 2011 action and they were dismissed by the court. As to the National Currency Act, the court explained that "[t]he theory that Federal Reserve notes are not legal tender is meritless as a matter of law." *Nooh*, 2012 WL 1075844, at *6. The court also stated that Nooh's "contention that mortgages having a term longer than five years are illegal [] is meritless." *Id.* at *8. To the extent Nooh's claim for unlawful interference with possessory interest is also based on the allegedly illegal foreclosure of the Property, such claim has been addressed and

dismissed by the court as implausible.

E.    Nooh's Federal Law Claims – Ninth and Tenth Causes of Action

In his enumerated Ninth Cause of action, Nooh maintains that CIT violated the Truth in Lending Act ("TILA") by: (1) failing to provide Nooh with "accurate material disclosures;" (2) failing to inform him with "the pros and cons of adjustable rate mortgages in a language . . . that [he] can understand;" (3) "advise [him] to compare similar loan products with other lenders," and (4) "offer other loan products that might be more advantageous for [Nooh] under the same qualifying matrix." (Compl. 25-26, ECF No. 1.)

TILA was enacted in 1968 with the purpose "to assure a meaningful disclosure of credit terms so that the consumer will be able to compare more readily the various credit terms available to him and avoid the uninformed use of credit." *Purtle v. Eldridge Auto Sales, Inc.*, 91 F.3d 797, 800 (6th Cir. 1996)(citing 15 U.S.C. § 1601(a)). The statute of limitations to bring a claim under either TILA is one year. *See* 15 U.S.C. § 1640(e). If an originating lender, such as CIT, makes an inaccurate TILA disclosure or fails to provide one at all, the statute of limitations begins to run on the date of the performance of the contract, i.e., when the loan transaction is

executed.    *Wachtel v. West*, 476 F.2d 1062, 1065-66 (6th Cir. 1973).

Nooh's TILA claim is barred by the one-year statute of limitations.    Nooh signed the loan documents on December 30, 2005, (ECF Nos. 16-1, 16-2); therefore, the statute of limitations for this claim ran out eleven years ago, on December 30, 2006.    Furthermore, even if this claim were timely, it is unclear what particular disclosures CIT failed to provide to Nooh.    Nooh's complaint contains no facts from which the court can infer a violation of TILA.    Accordingly, Nooh fails to state a TILA claim.

Lastly, in his Tenth Cause of Action, Nooh maintains that all the defendants violated the Real Estate Settlement Procedure Act ("RESPA").    (Compl. 27-28, ECF No. 1.)    RESPA, 12 U.S.C. § 2601 *et seq.*, imposes certain duties on loan servicers.    RESPA provides a one-year or three-year statute of limitations depending on the section of the statute.    *Id.* § 2614.

Nooh's RESPA claim is time-barred.    Nooh executed the loan documents on December 30, 2005, and he did not bring this claim within the one-year and three-year statutes of limitations provided for in RESPA.    Moreover, Nooh has not pled which of the defendants has violated RESPA nor what specific RESPA provision was allegedly violated by the defendants.    Therefore, Nooh fails to state a claim under RESPA.

F.   <u>Nooh's "Replevin Complaint" for Right of Redemption</u>

In his amended complaint, Nooh asserts that he is entitled to the possession of the Property through the "right of redemption" under Tennessee Code § 66-8-101. (Am. Compl. 2, ECF No. 13.)  Under Tennessee law, a debtor is entitled to a two-year right of redemption period after property is sold under a deed of trust or mortgage through nonjudicial foreclosure. Tenn. Code Ann. §§ 66-8-101, 66-8-102.  The right to redemption can be waived.  *Id.* § 66-8-101(3); *Swift v. Kirby*, 737 S.W.2d 271, 277 (Tenn. 1987).

In this case, Nooh waived his right of redemption when he executed the Deed of Trust.   The Deed of Trust states as follows:

> 23. Waiver of Redemption Rights, Exemptions, etc. Any sale of any or all of the Property pursuant to the power of sale or judicial sale provided for herein . . . shall be made free from the equity of redemption, statutory right of redemption, homestead, dower, curtesy, exemption rights, and all other rights and interests of Borrower, all of which are hereby expressly waived.   Notwithstanding anything to the contrary contained in any deed of trust which may be superior or inferior to the lien of this Deed of Trust, Borrower hereby expressly waives any equity of redemption, statutory right of redemption, homestead, dower, curtesy and all such other exemption rights.

(Deed of Trust 5, ECF No. 19-2.)   Nooh expressly waived the right of redemption that he now seeks to enforce, and, therefore, he fails to state a claim upon which relief may be granted.  *Schmelzer v. Huntington Bancshares Fin. Corp.*, No.

2:16-cv-134, 2017 WL 2807469, at *2 (S.D. Ohio June 29, 2017)("Mere legal conclusions and factual allegations in the complaint which are contradicted by a document properly before the court on a motion to dismiss are not well-pleaded facts that the court must accept as true." (citation and internal quotation marks omitted)).  Furthermore, Nooh cannot enforce his alleged interest in the Property through a replevin action because, in Tennessee, "[r]eplevin is only available for the recovery of personal property, and it may not be maintained to recover real property." *Jones v. Mangrum*, No. 3:16-cv-3137, at *3 (M.D. Tenn. Feb. 23, 2017).  Accordingly, the amended complaint fails to state a claim for replevin.

### III.  RECOMMENDATION

For the foregoing reasons, it is recommended that all the motions to dismiss be granted and that all of Nooh's claims against all the defendants be dismissed for failure to state a claim upon which relief may be granted.

Respectfully submitted this 5th day of April, 2018.


s/Diane K. Vescovo
_____
DIANE K. VESCOVO
CHIEF UNITED STATES MAGISTRATE JUDGE


NOTICE
Within fourteen (14) days after being served with a copy of this report and recommended disposition, a party may serve and file

written objections to the proposed findings and recommendations.
A party may respond to another party's objections within
fourteen (14) days after being served with a copy.  Fed. R. Civ.
P. 72(b)(2).    Failure to file objections within fourteen (14)
days may constitute a waiver of objections, exceptions, and
further appeal.